92 N.J. Super. 409 (1966)
223 A.2d 644
TERRANCE GALLOWAY AND HELEN GALLOWAY, HIS WIFE, PLAINTIFFS,
v.
COUNCIL OF THE TOWNSHIP OF CLARK, IN THE COUNTY OF UNION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 25, 1966.
*414 Mr. George W. Morton, Jr., attorney for plaintiffs.
Mr. Irvine B. Johnstone, Jr., Township Attorney, for defendant.
FELLER, J.S.C.
Plaintiffs Terrance Galloway and Helen Galloway, his wife, bring this action in lieu of prerogative writs against defendant Municipal Council of the Township of Clark demanding a judgment determining that the adoption of bond ordinance No. 66-10 is invalid, illegal and void.
The facts of this case disclose that on November 6, 1962 one Siggo V. Hejselbak was duly elected councilman of the fourth ward, Township of Clark, for a four-year term commencing January 1, 1963 and terminating December 31, 1966. Hejselbak complied with all statutory qualification requirements and took the oath of office.
In March 1965 the Union County grand jury returned indictment No. 284 against Hejselbak and three former councilmen and a former municipal officer, charging each of them with conspiring to unlawfully demand and receive a cash sum for their favorable consideration of a local variance application in violation of N.J.S. 2A:105-1, 2A:98-1 and 2A:98-2. Hejselbak was convicted in the Union County Court on March 11, 1966 after a jury trial.
The municipal council then served upon Hejselbak a ten-day notice fixing March 31, 1966 as the date for a public hearing on the charge preferred against him that he had been convicted of a crime involving moral turpitude, in violation of N.J.S.A. 40:69A-166. He was directed to show cause why he should not forfeit his office as councilman.
Three days prior to the scheduled hearing on March 28, 1966 the regular public meeting of Council was held, at which six of the seven council members, including Hejselbak were present. At the close of the public hearing on ordinance No. 66-10, a roll call vote of the councilmen resulted in five votes cast affirmatively and one abstention. Hejselbak voted with the majority.
*415 Ordinance No. 66-10 is entitled as follows:
"BOND ORDINANCE PROVIDING FOR THE ACQUISITION OF LANDS NECESSARY FOR THE INSTALLATION OF SIDEWALKS AND THE WIDENING OF MADISON HILL ROAD FROM RARITAN ROAD TO WESTFIELD AVENUE IN AND BY THE TOWNSHIP OF CLARK IN THE COUNTY OF UNION, NEW JERSEY APPROPRIATING $165,000.00 THEREFORE, AND AUTHORIZING THE ISSUANCE OF $157,000.00 BONDS OR NOTES OF THE TOWNSHIP FOR FINANCING SUCH APPROPRIATION."
Clark Township is governed by the Faulkner Act, the Optional Municipal Charter Act (N.J.S.A. 40:69A), plan F.
Plaintiffs point out that one of the requirements for adoption of a bond ordinance, as set forth in the Local Bond Law, N.J.S.A. 40A:2-17(b), is that:
"A bond ordinance shall be finally adopted by the recorded affirmative votes of at least 2/3 of the full membership of the governing body. * * *" (Emphasis added)
Plaintiffs' position with respect to the above statute is simply that there must have been five affirmative, valid votes cast in order for the bond ordinance to have been validly passed. They contend that because Hejselbak had been convicted on March 11, 1966, his vote on March 28, 1966 was invalid, thereby nullifying the passage of the bond ordinance.
On March 31, 1966 the following resolution was adopted by the township council:
"WHEREAS, SIGGO HEJSELBAK was named as a defendant in Indictment No. 284 returned by the Grand Jury of the County of Union in the January, 1964 term, and
WHEREAS, the said SIGGO HEJSELBAK was tried under such indictment by the Union County Court, Judge Erwin Fulop presiding, and
WHEREAS, the said SIGGO HEJSELBAK was found guilty of the charges set forth in said Indictment as amended, and
WHEREAS, the Council of the Township of Clark has heretofore notified the said SIGGO HEJSELBAK of a hearing to be held by *416 said Council to determine whether such conviction was for a crime or offense involving moral turpitude, and
WHEREAS, the Council has examined the Indictment and Record of Conviction and has considered the evidence and argument submitted in behalf of the said SIGGO HEJSELBAK,
NOW THEREFORE, BE IT RESOLVED by the Council of the Township of Clark as follows:
It hereby finds and determines that the conviction of SIGGO HEJSELBAK for the offenses described in such Indictment and Record of Conviction constitute a conviction for a crime involving moral turpitude as such terms are set forth in N.J.S.A. 40.69(a)-166.
AND BE IT FURTHER RESOLVED that the office of councilman, formerly held by SIGGO HEJSELBAK is declared to be vacant by reason of the provisions of N.J.S.A. 40:69(a)-166."
N.J.S.A. 40:69A-166 of the Faulkner Act provides as follows:
N.J.S.A. 40:69A-166 of the Faulkner Act provides as follows:
"Any person convicted of a crime or offense involving moral turpitude shall be ineligible to assume any municipal office, position or employment in a municipality governed pursuant to this act, and upon conviction thereof while in office shall forfeit his office. * * *"
Plaintiffs contend that if the propriety of the hearing of March 31, 1966 be conceded, the forfeiture of office should be retroactive to the date of conviction. Plaintiffs therefore claim that Hejselbak had forfeited the seat from which he voted on March 28, 1966 and the requisite two-thirds affirmative vote prescribed by N.J.S.A. 40A:2-17 was not attained.
Plaintiffs further contend that the conviction of an elected official of any government of any crime listed in Title 2A of the Revised Statutes involves moral turpitude and requires immediate, automatic forfeiture of office without the benefit of the hearing before a municipal council.
Plaintiffs also contend that Hejselbak had automatically forfeited his right as a citizen to vote under N.J.S.A. 19:4-1 on March 11, 1966, and as a result no longer fulfilled the requirements of N.J.S.A. 10:1-1 that the right of citizens to hold office is co-extensive with their right to vote; therefore, the bond ordinance in question did not receive the *417 required five valid votes and therefore was not legally adopted. Other questions have also been raised which will be considered and disposed of.

I
The case of Newark v. Department of Civil Service, 68 N.J. Super. 416 (App. Div. 1961), involved a proceeding to review a determination of the Civil Service Commission relating to the suspension and removal of a city electrical inspector who had been convicted of income tax evasion on a plea of nolo contendere. It was stated by the court (at page 425) that it was the intendment of the Faulkner Act to confer the greatest possible power of local self-government, consistent with the New Jersey Constitution, upon municipalities adopting a plan pursuant to the act, as well as to reduce the vast number of types of local government, with all their varying rules and regulations, by providing a flexible general pattern adaptable to the various communities and their needs. Liberal construction was to be given in favor of municipal corporations formed for local government.
The court there held that the provision of the Faulkner Act relating to forfeiture of office upon conviction of an offense involving moral turpitude was not self-executing and that the city electrical inspector could only be removed from office upon a proper adjudication, after due notice and hearing, that he had been convicted of an offense involving moral turpitude. The court stated:
"It is mandatory under the Faulkner Act that respondent DeMoura [the electrical inspector], occupying the municipal post of Electrical Inspector, shall `forfeit his office' upon conviction of a crime or offense involving moral turpitude. Having pleaded nolo contendere to an indictment for income tax evasion, he was subject to being removed from office upon the proper adjudication that he had been convicted of a crime involving moral turpitude. Such a determination, on an administrative level, would involve the exercise of a quasi-judicial function. * * * DeMoura is entitled to the essential of judicial action, including notice, and an opportunity to be heard. * * * He * * * has the right to a hearing before the appropriate administrative *418 agency to determine if the crime or offense for which he was convicted, * * * involved moral turpitude." (at pp. 433-434; emphasis added)
Finally, in disposing of the case, the court stated (at page 432) that it was not in accord with the theory that N.J.S.A. 40:69A-166 is a self-executing automatic forfeiture provision. Whether the cause of forfeiture has arisen is a question to be determined by the application of legal rules to facts to be ascertained and settled in the due course of the proceeding, in the presence of the officer to be affected.
It is mandatory under the Faulkner Act (N.J.S.A. 40:69A-166, supra) that a person holding an office or position, or one employed by a municipality, must "forfeit his office" upon conviction of a crime or offense involving moral turpitude. However, this forfeiture is not self-executing. Whether or not the question of forfeiture has arisen is a matter to be determined as to whether or not the offense or crime in question is one involving moral turpitude. Such a determination involves the exercise of a quasi-judicial function. See State, Stanley v. Passaic County Board of Chosen Freeholders, 60 N.J.L. 392 (Sup. Ct. 1897). This being so, the accused is entitled to the essentials of judicial action, including notice, and an opportunity to be heard. Hyman v. Muller, 1 N.J. 124, 129 (1948); Jersey City v. Dept. of Civil Service, 57 N.J. Super. 13 (App. Div. 1959); 16A C.J.S., Constitutional Law, § 611, p. 743; 4 McQuillin, Municipal Corporations (3d ed. 1949), Elections, Officers and Employees, sec. 12.255, p. 328. Finally, the accused has the right to a hearing before the appropriate agency to determine if the crime or offense for which he was convicted involved moral turpitude.
In the case of Clark v. Ennis, 45 N.J.L. 69 (Sup. Ct. 1882), the statute provided that if a sheriff fails to renew his bond within the time prescribed therein, his office shall immediately expire and be vacant, and any duties performed by him after such expiration shall be void. The sheriff in that case did not renew his bond, and the court, in holding that he *419 was an officer with a defeasible title until the judgment of forfeiture was announced in due form, and in further holding that all of his acts prior to such judgment are valid, stated:
"It is clear, I think, both upon reason and authority, that a statute declaring an office vacant for some act or omission of the incumbent, after he enters upon his duties, does not execute itself. Whether the cause of the forfeiture has arisen, whether the default in this case is the default of the court or the sheriff, is a question to be determined upon the application of legal rules to facts to be ascertained and settled in the due course of proceeding, in the presence of the officer to be affected." (Emphasis added)
This court is of the opinion that all of the crimes set forth in Title 2A of the Revised Statutes do not involve moral turpitude, merely by reason of the said offenses being listed in that Title. This is clearly explained in the case of the State Board of Medical Examiners v. Weiner, 68 N.J. Super. 468 (App. Div. 1961), which was a case involving an appeal, contesting the action of the State Board of Medical Examiners in temporarily suspending a doctor's license to practice medicine and surgery pending the outcome of a manslaughter indictment returned against him by a grand jury, on this theory that an indictment for a crime involving moral turpitude had been returned against him. The court, in holding that the State Board of Medical Examiners was without jurisdiction to order temporary suspension, quoted the opinion in Lorenz v. Board of Medical Examiners, 46 Cal.2d 684, 298 P.2d 537 (Sup. Ct. 1956):
"Moral turpitude must be inherent in the crime itself to warrant cancellation or suspension of a license because of the conviction. [Citation omitted] Moral turpitude is not inherent in the crime itself unless a conviction in every case would evidence bad moral character. Only if the minimum elements for a conviction necessarily involve moral turpitude and a conviction cannot be had without proof of facts showing moral turpitude, can the conviction be held to be of an offense involving moral turpitude." (at pp. 490-491)
The California disbarment case of In re Hatch, 10 Cal.2d 147, 73 P.2d 885 (Sup. Ct. 1937), further supports the *420 proposition that the facts and circumstances of the particular incriminating conduct must be examined to determine the presence or absence of moral turpitude. That case presented the court with the question of whether the violation of the state Corporate Securities Act, by defendant's known participation in the issuance and sale of securities without a permit, involved moral turpitude. The court, in ordering that the defendant be suspended from the practice of law, rendered a succinct and applicable definition of "moral turpitude:"
"The concept of moral turpitude depends upon the state of public morals, and may vary according to the community or the times. * * * This element of moral turpitude is necessarily adaptive; for it is itself defined by the state of public morals, and thus far fits the action to be at all times accommodated to the common sense of the community. * * * There is no hard and fast rule as to what constitutes moral turpitude. It cannot be measured by the nature or character of the offense unless, of course, it be an offense inherently criminal, the very commission of which implies a base and depraved nature. The circumstances attendant upon the commission of the offense usually furnish the best guide." (at p. 887; emphasis added)
"Moral turpitude" has further been defined in Black's Law Dictionary (4th ed. 1951), page 1160, as an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men, to society in general, contrary to the accepted and customary rule of right and duty between man and man.
This court is of the opinion that the forfeiture provision of N.J.S.A. 40:69A-166 is not self-executing or automatic, and until a hearing is held to determine whether a crime involving moral turpitude has been committed, a vacancy in a public office has not occurred. The above-cited cases show that a public officer has the right to a hearing to determine if the crime or offense for which he is convicted involved moral turpitude.
It is the opinion of this court that Hejselbak continued to hold legal right to his office until the governing body *421 had determined on March 31, 1966 that he had been convicted of a crime involving moral turpitude.
N.J.S.A. 40:69A-166 provides in its entirety as follows:
"Any person convicted of a crime or offense involving moral turpitude shall be ineligible to assume any municipal office, position or employment in a municipality governed pursuant to this act, and upon conviction thereof while in office shall forfeit his office. Any person who shall violate any of the provisions of sections 17-14, 17-15, or 17-16 of this article shall upon conviction thereof in a court of competent jurisdiction forfeit his office." (Emphasis added)
As has been pointed out, however, this court is equally cognizant of the case of the Newark v. Dept. of Civil Service, supra, which has expressly stated that the provision of the Faulkner Act for forfeiture of office upon conviction of an offense involving moral turpitude is not self-executing, and whether a cause for forfeiture has arisen is a question to be determined upon the application of legal rules to facts to be ascertained and settled in the due course of administrative proceedings in the presence of the officer who will be affected thereby.
Furthermore, the specific sections which N.J.S.A. 40:69A-166 incorporates by reference stated as "17-14, 17-15 and 17-16" respectively, are to be found in N.J.S.A. 40:69A-163, 164 and 165 and provide for the forfeiture of positions by those officers and employees having an interest in contracts or jobs with a municipality; accepting any franks, free passes, tickets or service from public utilities and transportation companies (with certain enumerated exceptions); giving promises of office, position, employment or benefits; * * * and provide for the discretionary removal of one failing to appear or testify before a court, legislative committee or the Governor. The crime of which Councilman Hejselbak was convicted does not fall into any of these enumerated categories.
With respect to the right of Councilman Hejselbak to continue to hold office pending a hearing of the board, *422 it is succinctly stated in McQuillin, Municipal Corporations (3d ed.), p. 424, that:
"An office is vacant or not according to whether it is occupied by one who has a legal right to hold it and to exercise the powers and perform the duties appertaining thereto."
Thus, Hejselbak had a legal right to hold his office pending the hearing by the board, and therefore was capable of casting bona fide, valid votes in his capacity as a member of the council. In a discussion of the different ways in which an office can be vacated, McQuillin states:
"In view of parliamentary law, it has been said that an office is vacated by the refusal of the elected member to accept it, and the communication of that fact to the proper authorities; refusal to qualify; resignation; and death. In all other instances, such as expulsion, adjudication of a controverted election, disqualification by act of the party, and acceptance of an incompatible office, ascertainment of the fact, and declaration of the existence of the vacancy are necessary." (at p. 424; emphasis added)
Thus, an elected office is vacated by expulsion only after an ascertainment of the fact and the declaration of the existence of the vacancy.
This court is also of the opinion that no distinction should be drawn with regard to the applicability of N.J.S.A. 40:69A-166 between elected officers and appointed officers and employees. The wording of the statute is both succinct and precise in its enumeration of people to be included under it, and this court cannot, in the absence of contrary case law, draw a distinction between officers and employees when the statute itself fails to do so. The intention of the Legislature, as evinced by the statute, was clearly to include persons holding municipal offices, positions, or employments, and it would therefore be illogical, both from a legislative and a judicial standpoint, to differentiate in the application of the statute between officers and employees.
Again, in the case of Newark v. Dept. of Civil Service, supra, the court stated:
*423 "* * * sections 163 through 167 of N.J.S.A. 40:69A clearly deal with * * * officers as well as employees and persons holding positions. If we accede to the contentions advanced by respondent that section 207 precludes the application of section 166 to Civil Service municipalities, we would have a situation where elected officers in communities which have adopted the Faulkner Act are neither subject to the disciplinary and removal sections of Title 11 [Civil Service] nor the forfeiture provisions of the Faulkner Act. This would be an intolerable result that the Legislature assuredly did not intend. There is no logical or apparent legislative reason why an officer, position holder or employee in a Civil Service community governed by the Faulkner Act should not be subject to forfeiture of his municipal post if convicted of a crime involving moral turpitude." (at pp. 427, 428; emphasis added)
Thus, there is no distinction to be drawn between elected officers and appointed officers and employees in the application of N.J.S.A. 40:69A-166, supra.

II
With respect to plaintiffs' contention that Councilman Hejselbak had forfeited his right as a citizen to vote under N.J.S.A. 19:4-1 automatically, and that as a result of this he no longer fulfilled the requirement of N.J.S.A. 10:1-1, this court cannot agree. At the outset, it should be noted that Chapter 4 of Title 19 of the Revised Statutes is entitled "The Electorate," and Article 1 is entitled "Right of Franchise." An "electorate" is defined in Webster's New International Dictionary of the English Language (2d ed. 1958) as "the whole body of persons entitled to vote in an election, or any distinct class or division of them," and "right of franchise" means the right of suffrage or the right or privilege of voting in a public election. See Black's Law Dictionary (3d ed.), p. 816. It can therefore clearly be seen that when N.J.S.A. 19:4-1 denies to persons who have been convicted of the enumerated offenses the right of suffrage, such denial is with respect to the right of a citizen to vote at a public election, and not regarding any votes which might be cast by an officer of a municipal corporation in the exercise of the rights and duties of his office.
*424 Plaintiffs' attempts to juxtapose the above cited inapplicable statute with N.J.S.A. 10:1-1 must similarly fail in persuading this court that Hejselbak was no longer eligible for the office which he was occupying at the date of his conviction. It is well known that the purpose of statutory construction is to bring the operation of a statute within the apparent intention of the Legislature. Sperry & Hutchinson Co. v. Margetts, 15 N.J. 203 (1954). Further, in the construction of a statute the court must read the terms used by the Legislature so as to reach an understanding of the legislative intent. See Mahoney v. Parole Bd., 10 N.J. 269 (1952), appeal dismissed 344 U.S. 871, 73 S.Ct. 173, 97 L.Ed. 675 (1952).
It is obligatory in statutory construction to take, or presume, the intention of the Legislature according to what is consonant with reason and good discretion. See Wright v. Vogt, 7 N.J. 1 (1951). And perhaps most important of all is the ruling that the general intention of the act controls the interpretation of its parts. See Hackensack Water Co. v. Ruta, 3 N.J. 139 (1949).
It should be noted that Title 10 of the Revised Statutes is entitled "Civil Rights," a term which connotes a sense of fair treatment and a guarantee to each individual citizen that he will not be discriminated against. The choice of the Legislature in the use of the words "Civil Rights" as the heading of the entirety of Title 10 is indicative to this court that the topic or spirit with which Title 10 is to concern itself, is guarantee against discrimination.
N.J.S.A. 10:1-1 states as follows:
"The right of citizens of this State to hold office or employment shall be coextensive with their right to vote, shall be equal as to all citizens and shall not be denied or abridged on account of sex or marital status. Such equal rights and privileges shall extend to all offices, boards, commissions or other public service in the State and its political subdivisions of whatever nature or kind.
There shall be no discrimination based on sex or marital status in the compensation, appointment, assignment, promotion, transfer, dismissal *425 or other matters pertaining to such office or employment of persons referred to in this section. * * *" (Emphasis added)
The italicized portions of the statute indicate that civil rights are the primary concern of N.J.S.A. 10:1-1. The statute guarantees that the right to hold office shall be coextensive with the right to vote, forewarns against discrimination as it may relate to the sex or marital status of an individual, and is totally in keeping with the spirit of Title 10. The statute, in effect, provides that any citizen of this State who has the right to vote shall not be denied the right to hold office or be employed because of sex or marital status. There is no correlation between the legislative intent expressed in the statute and the contention of plaintiffs that Hejselbak, having forfeited his right to vote, was no longer eligible to continue to hold office.

III
In support of their contention that N.J.S.A. 40:69A-166 provides for an automatic forfeiture upon conviction of a crime involving moral turpitude, plaintiffs cite N.J.S.A. 40:69A-37 which states:
"The council, in addition to such other powers and duties as may be conferred upon it by this charter or otherwise by general law, may:
(a) require any municipal officer, in its discretion, to prepare and submit sworn statements regarding his official duties in the performance thereof, and otherwise to investigate the conduct of any department, office or agency of the municipal government;
(b) remove any municipal officer, other than the mayor or a member of council, for cause, upon notice and an opportunity to be heard." (Emphasis added)
Plaintiffs contend that since the council did not have the authority to remove a member of council, N.J.S.A. 40:69A-166, of necessity, prescribes an automatic forfeiture of office. With this the court cannot agree.
A close scrutiny of the resolution of the council reveals that two conclusions, and only two conclusions, were reached at the hearing of March 31, 1966. Council decided *426 that (1) the crime of which Hejselbak was convicted was one involving moral turpitude, as set out in N.J.S.A. 40:69A-166, and (2) his office of councilman therefore was declared vacant. This court is of the opinion that Hejselbak was not ousted from his office by virtue of the council's doing so, but rather that once the council decided at the hearing that the crime in question was one involving moral turpitude, Hejselbak's seat became vacated or forfeited by reason of N.J.S.A. 40:69A-166 which so provides. Such forfeiture could not be retroactive to the date of the conviction of March 11, 1966 for the reason that it was not ascertained until the time of the hearing that the crime was, in effect, one involving moral turpitude. The cases cited in this opinion show ample authority for the hearing, and this being so, this court holds that Hejselbak validly occupied his seat in office from March 11, until March 31, 1966, at which time it was ascertained at the hearing that his crime was one of moral turpitude, and further, at that time the forfeiture provision of N.J.S.A. 40:69A-166 took effect, thereby ousting him from his position as a member of council.
This court is of the opinion that a "vacancy" was effected as an incident of the outcome of the hearing, but primarily as a direct result of the forfeiture provision of N.J.S.A. 40:69A-166, which took effect immediately upon ascertainment by the board of the question of moral turpitude.

IV
Furthermore, this court is not in agreement with plaintiffs' contention that a municipal government, by forestalling the holding of a hearing, could insure an unjustified continuance in office of a member of council, because of the statutory procedure by which such a situation could be remedied. N.J.S. 2A:66-6 expressly provides:
"A proceeding in lieu of prerogative writ may also be instituted as of right against any person for usurping, intruding into or unlawfully holding or executing any office or franchise in this state, by any person *427 who, under the former practice, would have the requisite interest to exhibit an information in the nature of a quo warranto with the leave of court." (Emphasis added)
In the case at bar, no action or proceeding of any kind was instituted against Hejselbak during the interval which existed from the time of his conviction on March 11, 1966 to the time of his hearing on March 31, 1966. This court is therefore of the opinion that Hejselbak continued to hold office under color of title after his conviction, and was entitled to exercise in good faith the rights and duties incident thereto, until it was adjudged at the hearing of March 31, 1966 that the crime of which he was convicted was one involving moral turpitude.
The plaintiffs, having seen fit not to institute a proceeding under N.J.S.A. 2A:66-6 and not contending in this case that Hejselbak cast his votes in bad faith, are merely of the opinion that the councilman's seat was automatically vacated upon his conviction on March 11, 1966. With this this court cannot agree. The reasoning and the cases illustrated in this opinion dictate that it was not until the time of the hearing of the board on March 31, 1966 that his seat was officially vacated.
It having been found that Hejselbak was entitled to exercise the rights and duties of his office on March 29, 1966, this court is of the opinion that the ordinance in question was validly adopted in compliance with N.J.S.A. 40A:2-17.
Judgments appropriate in form shall be submitted in accordance with R.R. 4:55-1.