CLIFFORD MAYS, JR. ET AL., PLAINTIFFS, v. THOMAS A.
PENZA ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division Atlantic County

Decided October 28, 1980.

*James A. Waldron* for plaintiffs (*Rubins & Waldron*, attorneys).

*Edward N. Fitzpatrick* for defendant Penza (*Clapp & Eisenberg*, attorneys).

*Salvatore Perillo*, Atlantic County Counsel, for defendant Atlantic County.

*Noah Bronkesh* for defendant Atlantic County Democratic Party (*Sills, Beck, Cummis, Radin & Tischman*, attorneys).

STEEDLE, J. S. C.

Plaintiff seeks by order to show cause restraints from this court whereby the name of defendant Thomas Penza shall be removed from the ballot, or, in the alternative, the ballots having already been printed, that Penza's name be barred from inclusion in the tabulation of results.

Plaintiff contends lack of compliance by Penza in the filing of his application for candidacy in the Egg Harbor City councilmanic election to be held November 4, 1980, with certain statutory requirements mandated by *N.J.S.A.* 19:13–20(e) and alleges that Penza's certification of candidacy was fatally defective in that the following language was by Penza deleted, *i. e.*, "I have not voted in a primary election of any other political party in the last two primaries, or contributed to the campaign funds of any other political party within one year prior to the last primary election." [1]

Penza, an incumbent councilman in Egg Harbor who won election as a Republican, chose not to seek re-election. On October 1, 1980, at about 4:15 p.m., the last day for filing as a

---

[1] *N.J.S.A.* 19:27–11 provides the mechanism for the nomination of candidates to run for unexpired terms of various offices (among others municipal offices) due to vacancies created between the date of the New Jersey primary election and 37 days preceding the State general election. *N.J.S.A.* 19:27–11 expressly incorporates the selection provisions contained in *N.J.S.A.* 19:13–20. Subsection (e) of the latter statute is at issue in the present case and provides in pertinent part as follows:

> e. A statement filed pursuant to subsection d. of this section shall state the residence and post office address of the person so selected, and shall certify that the person so selected is qualified under the laws of this State to be a candidate for such office, and is a member of the political party filling the vacancy. Accompanying the statement the person endorsed therein shall file a *certificate* stating that ... he is not a member of, or identified with, any other political party or any political organization espousing the cause of candidates of any other political party, *that he has not voted in a primary election of any other political party in the last two primary elections, or contributed to the campaign funds of any other political party within one year prior to the last primary election....*
> [Emphasis supplied]

candidate, he was endorsed by the Democratic Party, changed his registration and filed application to run in the election as a Democrat for an unexpired term of a Democratic councilman who had resigned his seat in August 1980. Plaintiff Mays seeks, as a Republican, election to the same seat as defendant Penza. The attorneys in this case stipulated certain facts:

1) Plaintiffs were aware of Penza's actions as of October 2, 1980;

2) Sample ballots are printed, addressed and ready for mailing, which by law must occur no later than October 29, 1980;

3) Absentee ballots have already been mailed;

4) Voting machines must be delivered to polling places by October 29, 1980.

Defendant Penza argues that any alleged noncompliance with *N.J.S.A.* 19:13–20(e) is not fatal to Penza's candidacy since the statutory requirements are unconstitutional. Furthermore, defendant Penza asserts relief to plaintiffs is barred by laches and failure to timely assert plaintiffs' rights. Plaintiffs argue that the county clerk should not have accepted the application as altered on its face. The clerk was apparently confronted with a quick judgment within the closing minutes of the last day for filing by a candidate. The latter issue is easily disposed of since our courts have held that a municipal clerk has no power to rule a candidate for office off the ballot because of a failure to comply with statutory requirements of residency; that issue must be determined by the court. *Cf. Bell v. Foster*, 83 *N.J.Super.* 455 (App.Div.1964). In this case defendant county clerk simply fulfilled her statutory duty of accepting Penza's certification as a candidate.

As to the remaining issues, testimony was taken from plaintiff Clifford Mays and plaintiff Julia Wimberg.

The certification referred to and marked DP-1 was attached to the verified complaint. The testimony revealed that plaintiff Mays, upon learning of the filing by Penza on October 2, 1980, immediately communicated with the county clerk's office where he was informed Penza may not be eligible to run because of the statute, but that the county clerk herself would not be available until the following Monday and he should communicate with her upon her return to the office.

Mays then consulted with several attorneys, unsuccessfully. Thereafter, he communicated with the State Election Board Commission and he also communicated with Republican Party counsel in Atlantic City and two additional lawyers throughout the early part of the week of October 6, 1980. Failing in all these avenues, a friend later referred him to his present attorney with whom he communicated by telephone on October 13, 1980, and Mays met with him on October 14. The record reflects plaintiffs' attorney filed the verified complaint with attached exhibits and affidavits on October 22, 1980, and the matter came on before this court on October 27, 1980, the first date upon which all counsel could be available.

I find and determine that the defense raised by defendant of laches on the part of the plaintiffs in filing this litigation is without merit. The court finds no statutory bar to the present action. Plaintiff Mays, from his testimony as adduced, bolstered by similar testimony from the witness Julia Wimberg, clearly revealed that efforts were made by both Wimberg and Mays to seek a remedy through the offices of the county clerk, the local Republican Party and the State Board of Elections without success, ultimately culminating in plaintiff Mays retaining present counsel to file this action.

Absent the statutory bar, the general limitations applicable to actions in lieu of prerogative writ are applied. *See Alongi v. Shatzman*, 57 *N.J.* 564, 572–575 (1971). Applying those general limitations to the case at bar, the court finds that plaintiffs made every reasonable effort to properly determine their rights under *Title* 19, "Elections." Therefore, the present action is not barred by laches.

Whether a trial court should grant a preliminary injunction in any particular case is a matter within its sound discretion. An injunction is an extraordinary remedy to be used sparingly, to be granted only with the exercise of great care and only where the proven equities establish a clear need. A court may grant the extraordinary relief of the preliminary injunction only in the

clearest of factual circumstances and for the most compelling of equities.

Plaintiffs' right to a preliminary injunction is dependent upon the fulfillment of three primary requirements. Plaintiffs must first show that their rights to a preliminary injunction are clear as a matter of law. The burden is upon the petitioners for the preliminary injunctive relief to establish a *prima facie* case indicating a reasonable probability that they will ultimately be entitled to the relief sought. Second, plaintiffs must show that there exists a probable danger that the right to which they claim they are entitled will be defeated unless the injunction is granted. This is the requirement that the applicants bear the additional burden of showing a right to the specific injunctive relief because an irreparable injury will result if the injunction is not granted. Plaintiffs must further establish that the irreparable injury complained of cannot be adequately compensated by money damages or that the remedy of law is inadequate. The third requirement for the issuance of injunctive relief is that plaintiffs show a substantial need of protection and that the damage to them in the absence of an injunction outweighs the foreseeable harm to defendant. This has been deemed to call for the balancing of the equities of the parties.

Applying the above enumerated standards *seriatim* to the present case, the court has made the following findings:

First, since the gravamen of plaintiffs' complaint lies in defendant Penza's alleged violation of *N.J.S.A.* 19:13–20(e), plaintiffs must establish a *prima facie* case free from all reasonable doubt as to the likelihood of their ultimate success. In this regard, defendants have raised the unconstitutionality of the above-cited statute in their defense. If that challenge is successful, it will abrogate the very foundation of plaintiffs' claim. In the present case the presumption of statutory validity does not establish plaintiffs' *prima facie* case and the court finds that defendants' position is not specious and merits full consideration.

*North Jersey Suburbanite Co., Inc. v. State*, 154 *N.J.Super.* 126 (App.Div.1977).[2]

The court finds that the two reported cases in this jurisdiction which deal with the issue before this court are inharmonious. Specifically, in *Hand v. Larason*, 163 *N.J.Super.* 68 (Law Div. 1978), the trial court held the contested statute constitutional.

By comparison, in *Gansz v. Johnson*, 9 *N.J.Super.* 565 (Law Div.1950), former Assignment Judge Donges held that the presently contested restrictions on campaign contributions and the two-year bar as to participation in a former party's primary election were unconstitutional.[3]

The court notes that it is not unmindful of the holding in *Stevenson v. Gilfert*, 13 *N.J.* 496 (1953), in which our Supreme Court questioned that aspect of the *Gansz* opinion which held that the statutory requirement which required a candidate to be a member of a political party was unconstitutional. The Supreme Court did not, however, address the issue of the constitu-

---

[2]*See Buckley v. Valeo*, 519 *F.2d* 821, 843 (D.C. Cir. 1975), remanded 519 *F.2d* 817, on remand 401 *F.Supp.* 1235, *aff'd. rev'd* on other grounds, 424 *U.S.* 1, 96 *S.Ct.* 612, 46 *L.Ed.2d* 659 (1976). The court, in the context of a challenge to campaign funding, restricting the 1974 amendments to the Federal Election Campaign Act of 1971, specifically 47 *U.S.C.*, sections 2 and 18, stated the standard of review in election cases to be as follows:

In view of the interests involved, both the compelling government interest needed to sustain such provisions, and the associational freedoms that are impinged, strict judicial scrutiny of the challenged provisions is appropriate.

The need for exacting judicial scrutiny is underscored by the plaintiffs' contention that the legislation is a composite of measures that serve the interests of the "ins"—members of Congress already elected—in resisting the incursions of the "outs." Such a contention, if substantial, is a warning signal that dilutes the deference courts give to legislatures, at least until the matter is painstakingly considered. In any event, we are aware that serious constitutional questions are raised by measures that may inhibit potential candidates. And in pondering the certified questions we have closely scrutinized plaintiffs' contentions.

[3]This opinion was cited with apparent approval by our Supreme Court in *Gangemi v. Rosengard*, 44 *N.J.* 166, 170 (1970).

tionality of the two-year bar to participation in a former party's primary campaign. It is this court's opinion, therefore, that *Gansz* remains a viable case as to that issue.

Further, the court is aware of a substantial body of federal case law holding unconstitutional various state statutes which have either unreasonably restricted voter crossovers in primary elections or have unreasonably restricted potential candidates from running for office with a new party affiliation. By way of example, the court refers to *Nagler v. Stiles*, 343 *F.Supp.* 415 (D.N.J.1972), and *Kay v. Brown*, 424 *F.Supp.* 588 (S.D.Ohio, 1976). These cases are merely two among many holding various election restrictions unconstitutional.

The court concludes that given the nature of the constitutional challenge in the present case, plaintiffs have not established the likelihood of their ultimate success as being free from reasonable doubt.

Secondly, as to that requirement for the issuance of a preliminary injunction which specifies that plaintiffs must establish that the right to which they claim entitlement will be defeated absent the issuance of an injunction, the court finds that plaintiffs have failed to meet that burden. Assuming that plaintiffs' standing is founded on two grounds: (1) as private citizens and (2) as candidates or party officials, there is no evidence in the record presently before the court which would tend to indicate any potential harm to plaintiffs in either capacity.

Leaving for another day the reasonableness of the time restrictions at issue in *N.J.S.A.* 19:13–20(e), the apparent purpose of this statute under consideration is to prevent a person whose party affiliations are unclear from assuming elective office under a party banner. Given the legislative prerogative, such a statutory restriction is enforceable, assuming its constitutionality.

The court finds, however, that the rights of New Jersey citizens can be vindicated by less drastic means than the issuance of an injunction striking defendant Penza's name from the Egg Harbor City ballots.

Necessarily, at this point, the third requirement for the issuance of a preliminary injunction must also be considered and, further those factors must be interrelated with the status of plaintiff Mays as a candidate as his interest is affected by the second requirement noted above. Briefly restated, the third requirement mandates that plaintiffs establish that the harm to them absent an injunction will outweigh the harm to defendants.

As noted above, the parties litigant in this matter are partisan adversaries for the same councilmanic seat and their respective party officials. If this court issues the requested injunction, defendant Penza and the Democratic Party will be substantially disadvantaged in the election process for the vacant council seat. Such a disadvantage would clearly constitute irreparable harm to defendants. By comparison, if the injunction is granted, plaintiff Mays would run virtually unopposed and his chances of success in the election would be enhanced immeasurably. This court's primary function in this case is to insure the continued vitality of New Jersey's electoral process within the framework of the law. In *Gangemi v. Rosengard,* 44 *N.J.* 166 (1965), Chief Justice Weintraub clearly outlined the public policy guideline which should govern when a candidate's rights are at issue by stating:

> The right to vote would be empty indeed if it did not include the right of choice for whom to vote. * * * In judging the validity of a restraint upon eligibility for public office, we must be mindful that the restraint is upon the right to vote as well. [at 170 citations omitted]

Applying that guideline to the present case, the court finds that if defendant Penza's name is stricken from the ballot in Egg Harbor City, there will be no viable election to fill the vacant council seat but, instead, this court would simply be sanctioning the coronation of candidate Mays to office. This court will not sanction such a proceeding.

This court finds that it is in the public interest to permit the citizens of Egg Harbor to have a choice of candidates and to permit those citizens to express their preference through the

ballot process as secured to all generations by our founding fathers.

In the event plaintiff Mays prevails on November 4, 1980, this case will be rendered moot and he will not have assumed office by judicial fiat.

In summary, the court finds that the constitutionality of *N.J.S.A.* 19:13–20(e) has been challenged and that the challenge is meritorious of further consideration. Since the validity of defendant Penza's candidacy turns on the constitutionality of that statute, it would be inappropriate to strike his name from the ballot at this juncture since defendants would be irreparably harmed. However, since plaintiff Mays may prevail in the general election, a decision on the constitutionality of the statute would be premature; courts in this State will only consider ripe constitutional challenges; *Sabato v. Sabato* 135 *N.J.Super.* 158 (Law Div.1975). Further, constitutional questions will not be addressed by a court unless absolutely necessary to the decision. *Ahto v. Weaver,* 39 *N.J.* 418 (1963). Additionally, it is generally recognized that the Attorney General should be afforded the right to intervene in a private suit in which the constitutionality of a state statute is at issue. *R.* 4:28–4(a); *cf. Barbier v. Governor State of N.J.,* 475 *F.Supp.* 127 (D.N.J.1979). Given these clear rules of constitutional construction and policy, the court finds that a decision as to the merits of the defense would be premature.

Accordingly, the court will not strike Penza's name from the ballot in Egg Harbor City.

Further, it is ordered that the Board of Elections will continue with all necessary preparations for Tuesday's election.

It is also ordered that all votes cast for defendant Penza will be counted and tabulated following the close of the polls.

However, the court does order that in the event defendant Penza is determined to have received a majority of votes, his appointment to office and swearing in are hereby stayed pend-

ing a full resolution of the present litigation and further order of this court.