Based on the foregoing, the court sustains the board's decision in all respects.

608 A.2d 462
IN RE 1992 MUNICIPAL ELECTIONS FOR
THE CITY OF PERTH AMBOY.

Superior Court of New Jersey
Law Division (Civil)
Middlesex County

Decided April 10, 1992.

*Billy E. Delgado* for defendant (*Cameron & Delgado,* attorneys).

*Michael A. Pane* and *Dennis M. Galvin,* for plaintiff.

*Edward Testino,* as *Amicus Curiae,* representing Karen Kubulak.

LERNER, J.S.C.

This matter comes before the court on an Order to Show Cause to remove T.T.'s name from the ballot for the upcoming city council election for the City of Perth Amboy. The first question to be decided is whether a conviction for the disorderly person's offense of issuing a bad check is an offense of moral turpitude. The second question is whether the court can permit an alternate candidate's name to be submitted for inclusion on the ballot if a candidate is removed by court order after the deadline for amended nominating petitions has passed.

T.T filed a petition to run for a council seat in the City of Perth Amboy. T.T. was one candidate of a group of candidates who elected to run together for their respective offices in accordance with *N.J.S.A.* 40:69A–153. T.T. responded to a questionnaire which was filed with the municipal clerk. In so responding T.T. stated that he had never been convicted of a crime or offense of moral turpitude. Some time thereafter, the municipal clerk was notified that defendant had pled guilty to the offense of issuing a bad check, a violation under 2C:21–5. The municipal clerk now seeks guidance as to whether T.T's name should be stricken from the ballot as a result of his conviction of the aforementioned offense.[1]

The City of Perth Amboy is a municipal government formed under the provisions of the Faulkner Act, *N.J.S.A.* 40:69A–1 *et*

---

[1] It appears from defendant's brief that a hearing was scheduled for April 14, 1992 at 7:00 p.m. to vacate the T.T. conviction. At that hearing, T.T.'s conviction was vacated, and he was able to remain on the ticket.

*seq.* The provisions of that act govern the manner in which the municipal elections are held. *N.J.S.A.* 40:69A–166 provides in pertinent part:

Any person convicted of a crime *or offense* involving moral turpitude shall be ineligible to assume any municipal office, position or employment in a municipality governed pursuant to this act, and upon conviction thereof while in office shall forfeit his office (emphasis added).

The question before this court is whether a conviction of the offense of writing a bad check constitutes a conviction of an offense involving moral turpitude.

A violation of a crime or offense set forth in Title 2A does not necessarily mean the offense committed was one involving moral turpitude, *Galloway v. Council of Clark Township*, 92 *N.J.Super.* 409, 419, 223 *A.*2d 644 (Law Div.1966). A crime is one involving moral turpitude if a conviction cannot result unless there is proof of facts indicating moral turpitude. *State Board of Medical Examiners v. Weiner*, 68 *N.J.Super.* 468, 491, 172 *A.*2d 661 (App.Div.1961).

Moral turpitude is defined as:

An act of baseness, vileness or depravity in the private duties which a man owes to his fellow men, to society in general, contrary to the right and duty between man and man.

*Id.* at 483.

When the intent to defraud is an element of the crime, the crime is one of moral turpitude. *O'Halloran v. DeCarlo*, 156 *N.J.Super.* 249, 252, 383 *A.*2d 769 (Law Div.1978). Our Supreme Court has held that the intent to defraud is an element of the offense of writing a bad check. *State v. Covington*, 59 *N.J.* 536, 284 *A.*2d 532 (1971). Therefore, T.T., in being convicted of the offense of writing a bad check has been convicted of a crime or offense of moral turpitude and is disqualified from being eligible for office.

Having disqualified T.T., the issue this court now must face is whether the other candidates who elected to join with T.T.

will have the opportunity to submit a petition for another candidate.

*N.J.S.A.* 40:69A–153 states:

At least 46 days prior to a regular municipal election ... the names of candidates for all offices shall be filed with the municipal clerk, before 4:00 p.m. ...

This matter was not brought to the court's attention until 39 days prior to the date of the election, and the hearing to determine the issue was scheduled for 32 days prior to the election. The ballots, however, have not yet been printed, and there is still time for the ballots to be completed.

*N.J.S.A.* 40:45–10.1 gives guidance as to how to fill vacancies in such a situation. The statute provides:

When several candidates for the office of commissioner petition that their names be grouped together and that one designation named by them shall be printed opposite their names pursuant to section 6 of P.L.1981, c. 379 (C. 40:45–10), the candidates whose names are to be grouped in a bracket pursuant to that section may file with the clerk of the municipality a designation, in writing, of the names of three persons as a committee on vacancies.

A committee on vacancies established pursuant to this act shall have the power if a vacancy arises by death, resignation or otherwise, of any of the candidates included in said group, to fill the vacancy by filing with the clerk of the municipality the name of the candidate in the place of the person whose death, resignation or other occurrence caused the vacancy.

Any such designation to fill a vacancy shall have the same force and effect as an original petition of nomination.

To be effective, any designation by the committee on vacancies must be filed with the clerk of the municipality not less than 10 days before the election is to be held. In the event a vacancy occurs within 10 days of the election, any filing with the clerk of the municipality of a designated substitute candidate shall be made forthwith, and said designee shall be placed on the ballot if it is feasible to do so. The procedure and the manner and method of placing the name of any substituted candidate on the ballot and of the election of the candidates for the office, as nearly as practicable, shall be in accordance with the provisions of Title 19 of the Revised Statutes applicable in the case of vacancies in other offices to be filled at elections.

Nothing in this section shall prevent the filing of vacancies in any other manner authorized by Title 19 of the Revised Statutes, except that a candidate in a group bracket, who joins in the designation of a committee on vacancies under the provisions of this act, may not participate in any other method for filling a vacancy in his candidacy for commissioner.

Therefore, the candidates had the option of designating a committee to fill vacancies. Had the candidates exercised this option, this matter would have been resolved efficiently. Since the candidates didn't exercise this option, however, the court must look to the statutes governing the general elections.

*N.J.S.A.* 19:13–19 concerns itself with the filling of vacancies.

If the candidate vacating the nomination was nominated directly by petition his successor shall be nominated in the same manner by direct petition, which new petition of nomination must be filed with the Secretary of State or county clerk, as the case may require, not later than 54 days before the day of election whereat such candidate is to be voted for.

Under the aforementioned statute, however, T.T.'s running mates are still not within time to submit another petition.

■ It should be noted at the outset that public policy demands that our election laws be liberally construed so that the voters are afforded the opportunity to make a choice. *Catania v. Haberle,* 123 *N.J.* 438, 588 *A.*2d 374 (1991). Were this court to simply strike the candidate's name from the ballot, the voters would be denied a choice of candidates for that particular council seat. This would be against the spirit of the election laws as well as against the spirit of a democratic system.

Another option would be to leave T.T.'s name on the ballot. In *Mays v. Penza,* 179 *N.J.Super.* 175, 430 *A.*2d 1140 (Law Div.1980), a candidate's nomination was challenged on the basis that he failed to comply with the requirements of *N.J.S.A.* 19:13–20(e) The candidate, in turn, challenged the constitutional validity of the statute. The court permitted the candidate's name to remain on the ballot.

The case *sub judice,* however, is distinguishable. If T.T.'s name were permitted to remain on the ballot, and he won the election, he would still be ineligible for office according to law. The City of Perth Amboy would then be forced to incur the expense of having another election for T.T.'s seat. This would be an inefficient waste of the taxpayers' money.

The Supreme Court has stated that time limitation within the election legislation exists to afford the election officials time to prepare the technical niceties for the general election. *Kilmurray v. Gilfert,* 10 *N.J.* 435, 91 *A.*2d 865 (1952).

■ Ballots for the election have not yet been printed. The municipal clerk still has time to prepare the ballots and give notice to the local newspapers. Therefore, the clerk would not be prejudiced if additional time were granted in which a new petition could be submitted. By allowing such an extension, the voters' interests will best be served. An extension of three days is granted for the filing of a petition to fill the vacancy created by removing T.T.'s name from the ballot. The petition must be refiled in accordance with the requirements of *N.J.S.A.* 40:69A–153. The same petitioners who originally named T.T., must name his replacement.

*N.J.S.A.* 19:23–13 provides that in the event of a vacancy, a new petition may be filed within three days of the time the vacancy occurred. Such petition must be signed by a majority of the persons who signed the original petition.