**Flossie GORDON, Lucille Morris, and all others similarly situated, Plaintiffs,**

v.

**EXECUTIVE COMMITTEE OF the DEMOCRATIC PARTY OF the CITY OF CHARLESTON, and the Board of Commissioners of Elections for the City of Charleston, Defendants.**

Civ. A. No. 71–852.

United States District Court,
D. South Carolina,
Charleston Division.

Heard Sept. 8, 1971.

Decided Sept. 28, 1971.

Fred Henderson Moore, Charleston, S. C., for plaintiffs.

Coming Ball Gibbs, Jr., Morris D. Rosen, Henry B. Smythe, I. M. Goldberg, Charleston, S. C., for defendants.

Before RUSSELL, Circuit Judge, and SIMONS and BLATT, District Judges.

THREE–JUDGE COURT OPINION
and ORDER

PER CURIAM:

A Democratic primary election was held on June 8, 1971, to select a party nominee for the office of Mayor of Charleston to run in the general election for that office slated on December 14, 1971. The election was subject to the provisions of the general election law of South Carolina. Section 47–57, Code of Laws of South Carolina, 1962. Such general election law, *inter alia*, required all voters to take the following prescribed oath as a prerequisite to being permitted to vote:

"I do solemnly swear or affirm that I am duly qualified to vote at this primary election and in this club, and that I have not voted before at this primary election or in any other party's primary election, convention, or precinct meeting held this year." Section 23–400.71, Code of Laws of South Carolina, 1962.

An issue arose prior to the election, whether, in view of the statutorily pre-

scribed oath, quoted *supra*, registered voters who had participated on February 20, 1971, as voters in a Republican primary for the selection of a party nominee to run in a special general election for the federal House of Representatives could vote in this Democratic primary on June 8, 1971. The Executive Committee of the Charleston City Democratic Party ruled that they could vote and so advised the box managers. Some 744 persons, who had previously voted in the Congressional primary, were allowed by this ruling to vote in the mayoralty primary election. Of these, 492 were challenged and 252 were not. The election was close enough that, if the votes under attack had been disregarded, the result could have been changed.

The plaintiffs, who are registered voters of the City of Charleston, filed this action, alleging that the Executive Committee of the Charleston City Democratic Party had, in conducting the primary of June 8th, announced and pursued policies that violated or altered the effect of various provisions of Title 23 of the South Carolina election laws and previously applied administrative applications of such laws and, as a result, had changed the election procedures as established by statute and administrative application, without complying with the requirements of Section 5 of the Voting Rights Act of 1965.[1] As a result, this Court was convened in accordance with the requirements of Section 5 to consider such challenge to the election.

After notice and with the agreement of the parties, the Court held a hearing at Columbia, South Carolina, on September 8, 1971, to determine the jurisdiction of the Court to consider the claimed violation of Section 5, which admittedly represented the only basis for jurisdiction in this statutory court. At the hearing, the plaintiffs argued, in support of jurisdiction under Section 5, that by the express terms of Section 23–400.71, no registered voter who had participated in one party's primary for the

selection of a nominee for Congress could then vote in another party's primary for selection of a mayorial candidate for the City of Charleston because both primaries, though for different offices and at different times, were held in the same year. Accordingly, the issue posed was, whether there had been a change in voting procedure effected either by a variation from the valid requirements of the statute itself or from the prior administrative application of it in the February primary elections. If there was no such variation, there obviously and admittedly would be no basis for an action based on Section 5 of the Voting Rights Act of 1965 and no authority for this special court to act.

We shall consider the two claims of statutory and administrative variance *seriatim*.

## I.

Was there a variation from the requirements of Section 23–400.71 by the ruling of the City Democratic Executive Committee given in its construction of the Section?

█ It is clear from the express language of the statute that the ruling of the Executive Committee was violative of that part of this Statute which purported to disqualify the voter from exercising his freedom of the ballot in the Democratic primary merely because he had voted in the primary of another party within one year. It is no less clear, however, that such a lengthy disqualification is an unconstitutional limitation upon the voter's freedom of the ballot. Voting is a fundamental matter in a free and democratic society, Reynolds v. Sims, 377 U.S. 533, 561, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) which is preservative of all rights. Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). For this reason, the trend of recent decisions, with few exceptions, affirms that durational residential requirements of one year, or even six months, as a prerequisite for

1. 42 U.S.C.A. 1973c.

voting, are unconstitutional limitations upon a citizen's right of suffrage. Such limitations must have a "sound or compelling purpose" to meet the constitutional test. Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Phoenix, Arizona v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); Affeldt v. Whitcomb, 319 F.Supp. 69 (D.C. 1970); Kollar v. City of Tucson, 319 F. Supp. 482 (D.C.1970); Burg v. Canniffe, 315 F.Supp. 380 (D.C.1970); Rimarcik v. Johansen, 310 F.Supp. 61 (D. C.1970); Hadnott v. Amos, 320 F.Supp. 107 (D.C.1970); Lester v. Board of Elections, 319 F.Supp. 505 (D.C.1970); Bufford v. Holton, 319 F.Supp. 843 (D. C.1970). *Contra,* Drueding v. Devlin, 234 F.Supp. 721 (D.Md.1964), aff. per curiam, 380 U.S. 125, 85 S.Ct. 807, 13 L.Ed.2d 792 (1965); Cocanower v. Marston, 318 F.Supp. 402 (D.C.1970); Piliavin v. Hoel, 320 F.Supp. 66 (D.C. 1970). We can perceive no basic difference between a durational residence restriction and one which, using a like durational standard, bases the restriction upon the manner in which one had previously voted. No sound or compelling purpose can possibly justify "locking" a citizen into a party and denying to him for a full year freedom to change parties. Such an arbitrary restraint upon the voter is both unreasonable and unconstitutional. Our system of government is based on the consent of the governed, and such consent is only illusory when voters are prevented by artificial restrictions for significant periods of time from changing political parties even though events or the actions of elected representatives may have convinced the voter that a change in party allegiance is warranted.

■ It does not follow, though, that, since this time disqualification is unconstitutional, the entire statute should be disregarded. Courts should sustain, and administrative officials may apply, that part of the statute which is constitutional, if such can be done without violating completely the legislative purpose. Thus in the election case of Lassiter v. Northampton County Election Board, 360 U.S. 45 at 49, 79 S.Ct. 985, 3 L.Ed.2d 1072 (1959), the United States Supreme Court found invalid the "grandfather clause" in a North Carolina constitutional provision dealing with voter qualification but sustained and applied the remainder of the provision. The real intent of the statute now under consideration was to prevent a voter from participating in nominating primaries of two parties in the same election. That purpose is obvious from Section 400.79, which, unlike Section 400.71 which merely provides the voter's oath, proscribes specifically a voter's participation in more than one primary election, preliminary to the same general or special election. That purpose can be sustained, without giving effect to the concluding phrase in Section 400.71, which, as we have already observed, is unconstitutional. Excising its unconstitutional limitation, Section 400.71 would, by the terms of the oath thereby required, only deny to the voter the right to participate in two primary elections preliminary to the same general or special election. When the statute is thus restricted within its constitutional limits, it accords with the ruling of the City Democratic Executive Committee, harmonizes with Section 400.79, and will not invalidate the challenged voters from properly exercising their suffrage in the primary election. The action of the election managers and of the Executive Committee thus did not represent a change from the statute, as restricted to its constitutional limits.

II.

It is equally clear that the ruling of the Executive Committee did not represent a departure from the procedure followed in connection with the special election in the preceding February. All that was ruled there was that one who had voted in a primary of one party could not participate in the primary of another party held to select the nominee

in the same special general election. That was exactly the construction given Section 23–400.71 by the City Executive Committee in connection with the primary election involved in this proceeding.

### III.

■ To summarize, there was no change by the action of the City Democratic Executive Committee in fixing the qualification for voting at the primary election to select a mayoralty nominee at the election on June 8, 1971 from the procedure fixed in Section 23–400.71, as constitutionally delineated, or from the procedure administratively observed at the special primary election held in February. Without such change, there is no basis for jurisdiction in this Court under Section 5 of the Voting Rights Act of 1965. This statutory court is accordingly dissolved.

Any rights asserted by the plaintiffs under other federal statutes or Constitutional provisions can be asserted only before the District Court. This order is accordingly without prejudice to the right, if any, to proceed with this action on the constitutional grounds asserted by them in the District Court.