**Hugh C. MacGUIRE et al., Plaintiffs,**

v.

**Mabel S. AMOS, as Secretary of State of the State of Alabama, et al., Defendants.**

**Civ. A. No. 3654–N.**

United States District Court,
M. D. Alabama, N. D.

May 13, 1972.

---

7. Tr. 23.

Neil Bradley, Atlanta, Ga., and Howard A. Mandell, Montgomery, Ala., for plaintiffs.

Gordon Madison, Asst. Atty. Gen., State of Alabama, for defendants Amos and Baxley.

James J. Carter (Hill, Hill, Stovall, Carter & Franco, Montgomery, Ala.) appeared for Margaret Olive Jones.

R. Clifford Fulford, Birmingham, Ala. (Levine, Fulford & Pope, Birmingham, Ala.) for Robert S. Vance.

James H. Hancock (Balch, Bingham, Baker, Hawthorne & Williams, Birmingham, Ala.) represented J. Richard Bennett.

There were no appearances for the other defendants.

## OPINION AND ORDER

Before RIVES, Circuit Judge, and JOHNSON and VARNER, District Judges.

### PER CURIAM:

Plaintiffs have brought this suit seeking a judicial declaration that section 5 of the Voting Rights Act of 1965, 42 U. S.C. § 1973c, is applicable to the rules, promulgated by the Democratic and Republican parties, which governed the conduct of the May 2, 1972, elections of delegates to the parties' respective national conventions. A finding that section 5 is applicable has but one immediate consequence—the defendants must submit their rules either to the Attorney General of the United States or to the United States District Court for the District of Columbia for a determination of whether such rules serve to deny or abridge the right to vote on account of race or color. A three-judge court was empanelled to hear this case pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2284.[1]

Our role in this litigation is severely limited. We are not at liberty to determine whether the challenged rules

1. There is no doubt that plaintiffs have standing to institute this action. *See* Perkins v. Matthews, 1971, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476; Allen v. State Board of Elections, 1969, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1.

actually discriminate. Perkins v. Matthews, 1971, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476; Allen v. State Board of Elections, 1969, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1. Rather we confine our inquiry to the question of section 5's applicability.

■ Defendants contend that, because the rules at issue were promulgated by the political parties rather than by the State's legislature or by a political subdivision of the State, section 5 does not come to bear.[2] We disagree. In Alabama the political parties are instilled by statute with the power to conduct primary elections and to have their national convention delegates selected therein. The right to vote in such elections is specifically guaranteed in the 1965 Voting Rights Act. 42 U.S.C. § 1973*l*(c) (1). Clearly the State cannot avoid the strictures of the Act by empowering some body other than its legislature to regulate those electoral processes. Where the political parties are given such head by a specific statutory grant of authority, their actions rise to the level of actions by the State.

In Wilson v. North Carolina State Board of Elections, M.D.N.C.1970, 317 F.Supp. 1299, a three-judge district court was faced with the question whether action taken by the state's Democratic party was within the ambit of section 5. The court held that the Act applied; the rationale for that decision is persuasive.[3] *See also* Gilmore v. Greene County Democratic Party Executive Committee, 5 Cir. 1970, 435 F.2d 487. (In a case involving political party action, the Fifth Circuit Court of Appeals found no violation of the Voting Rights Act, but it did not turn its decision on a theory that actions by a party are without the scope of section 5.)

In short, if a state could escape the requisites of section 5 by channeling to the political parties its authority to regulate primary elections, the force of the Voting Rights Act in the context of primaries would be entirely abrogated.

Having found that party action may be covered, we now turn to the question whether the particular rules at issue are within section 5's reach. In this case each political party constructed geographical voting districts from which candidates ran for a seat at their party's national convention. Obviously, the boundaries of voting districts can be gerrymandered along racial lines. Section 5 provides in essence that where a state institutes voting practices different from those in effect on November 1, 1964, or from those in effect on November 1, 1968, it must, before enforcing such changes, seek approval either in the District Court of the District of Columbia or from the Attorney General of the United States. Differences in voting practices which carry a potential for racial discrimination, such as those here challenged, are unarguably within the coverage of section 5. *See Perkins, supra.*

Our decision in this case—that the action of the defendants is encompassed by the 1965 Voting Rights Act—should not be interpreted by anyone as even inferentially suggesting that the practices here under attack are violative of any portion of the Voting Rights Act or of

2. Section 5, 42 U.S.C. § 1973c, begins with the words, "Whenever a State or political subdivision * * *."

3. We are aware of the court's decision in Williams v. The Democratic Party of Georgia, No. 16286, N.D.Ga. April 6, 1972 (three-judge court), but find it to be factually distinguishable. In that case the court held that section 5 did not apply where the Georgia Democratic party established that delegates to the national convention would be selected by local conventions rather than by election. As noted above, the 1965 Voting Rights Act, 42 U.S.C. § 1973*l*(c) (1), specifically guarantees the right to vote in all elections, general, special and primary. But, the Act does not protect one's right to participate in local conventions. Without reflecting on the soundness of the decision in *Williams,* we hold that the factual differences between that case and ours are sufficient to make its rationale inapplicable to the case at hand.

the constitutional rights of plaintiffs or members of the class which they represent. It is entirely conceivable that were this matter presented either to the Attorney General or to the District Court for the District of Columbia. it would be determined that the delegate selection processes here scrutinized are not discriminatory and have no potential for discrimination. We do not wish to cast any cloud upon the validity of the recent election of delegates to either convention.

■ Plaintiffs ask that in addition to declaring section 5's applicability we set aside the May 2, 1972, delegate elections. We feel constrained to leave the litigants in their present posture for several reasons. First, in both *Allen, supra,* and *Perkins, supra,* the Supreme Court declined a like invitation primarily on the ground that "the scope of § 5 coverage was [on the facts of each case] an issue of first impression and 'subject to rational disagreement.' " *Perkins, supra,* 400 U.S. at 395, 91 S.Ct. at 440; *Allen, supra,* 393 U.S. at 572, 89 S.Ct. at 835. Similarly, the contention that section 5 encompasses political party action is one of first impression and subject to rational disagreement; hence as in *Allen* and *Perkins* we give our decision prospective application only. *Id.*

Moreover, equity commands that the litigants stand where they are. Were we to set aside the recent elections, there would be no means by which delegates could be selected anew. Any set of rules made applicable to a special election would also be subject to section 5 treatment. Thus, the result of setting aside the recent election might be to leave Alabama unrepresented in the forthcoming national conventions. There has been no determination that the rules in force during the May 2 primary were discriminatory in effect. We find it rational and excusable that the

defendants have not heretofore sought such a determination under the provisions of section 1973c. Under all the circumstances, it would be manifestly unjust to set aside the recent elections, thereby disenfranchising the voters of this State.

In sum, we find that section 5 is applicable to the rules here at issue. However, in this case the plaintiffs have not filed their challenge to the rules and procedures they now attack in such time as will afford the defendants a reasonable opportunity to secure a ruling either from the United States District Court for the District of Columbia or from the Attorney General of the United States, as provided by the 1965 Voting Rights Act. Under such circumstances, that Act should not be applied in such a manner as to disenfranchise any of the voters of this State. Accordingly, for this reason, and for the other reasons heretofore stated, we do not enjoin or hold invalid the May 2, 1972, delegate elections or the run-off delegate elections scheduled for May 30, 1972. Ample time exists for compliance by the defendants with the provisions of the 1965 Voting Rights Act by submitting their rules and procedures either to the United States District Court for the District of Columbia or to the Attorney General of the United States prior to any future use of the rules and/or procedures for the election of delegates. This Court leaves it optional with the defendants as to whether they should undertake such compliance with the 1965 Voting Rights Act prior to the 1972 party conventions.

Accordingly, this Court declares and adjudges that the rules and procedures here involved are covered by the 1965 Voting Rights Act.

It is further adjudged and ordered that plaintiffs' request for injunctive relief is denied and all other relief sought by plaintiffs is hereby denied.