Stephen M. NAGLER et al., Plaintiffs,

v.

Beatrice M. STILES et al., Defendants.

Karen GROSSMANN et al., Plaintiffs,

v.

William F. YEOMANS, Superintendent of Elections of Essex County, et al., Defendants.

Civ. A. Nos. 746–72, 783–72.

United States District Court,
D. New Jersey.

May 26, 1972.

Richard Samuel, Westfield, N. J., for plaintiffs Stephen Nagler and others.

Morris Levin and Hellring, Lindeman & Landau, Newark, for plaintiffs Karen Grossmann and others.

George F. Kugler Jr., Atty. Gen. of New Jersey by G. Robert Wills, Deputy Atty. Gen., for defendants.

Before GIBBONS, Circuit Judge, and WHIPPLE and FISHER, District Judges.

## OPINION AND JUDGMENT

CLARKSON S. FISHER, District Judge.

These two actions, both seeking the same relief, challenge certain provisions of the New Jersey election law, specifically N.J.S. 19:23-45 and 19:23-46, alleging that these provisions are an unconstitutional burden on the right to vote and the right of association. We heard and decide them together.

The specific sections of N.J.S. 19:23-45 and 19:23-46 under attack in this action are those which require a voter who wishes to change his political affiliation to abstain from voting in two consecutive primary elections. The specific sections in question are as follows:

N.J.S. 19:23-45 Balloting regulations

&ast; &ast; &ast; &ast; &ast; &ast;

"A member of any political organization espousing the cause of a candidate or candidates of any political party shall be ineligible to vote in the primary of another political party while such membership is in force or within one year thereafter; such person shall be deemed for all intents and purposes a member of the political party whose candidate or candidates such organization is espousing.

A voter who votes in the primary election of a political party shall be deemed to be a member of that party until two subsequent annual primary elections have elapsed after casting of such party primary vote."

N.J.S. 19:23-46 Determination of right to vote

"Each voter offering to vote shall announce his name and the party primary in which he wishes to vote. The district board shall thereupon ascertain by reference to the signature copy register or the primary election registry book required by this title . . . that such voter is registered as required by this title and also that he is not ineligible or otherwise disqualified by the provisions of Section 19:23-45 of this title in which event he shall be allowed to vote."

Plaintiffs argue that the above sections inhibit their free choice as voters; that it is impossible to know which party in the future will be espousing issues important to a particular voter or which party will have primary contests which will enable a voter to register his preference on an issue or a candidate. The State, on the other hand, argues that the statutes in question serve a legitimate and worthwhile purpose in preventing what is known as "raiding". "Raiding" occurs when members of one party vote in the primary of another party for the sole purpose of bringing about the nomination of the weakest candidate, so as to give their own cause or candidate greater strength in the general election. Preventing this helps to uphold the integrity of the electoral process.

■■ Primary elections, as well as general elections, are subject to state control but are also subject to constitutional scrutiny by Federal Courts. United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). When it is claimed that the State's control infringes upon the right to vote and the right of association, the burden is then on the State to show that such infringement is the result of the State's enforcement of a compelling interest, Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995, 31 L.Ed.2d 274; Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L. Ed.2d 24 (1967); and that the State's interest could not be protected through less restrictive means. *Dunn, supra;* Pontikes v. Kusper, 345 F.Supp. 1104 (N.D.Ill., 1972).

Other Federal Courts have recently been confronted by the same issues as those before this Court, that is, is the prevention of "raiding" a compelling state interest and are the means used in accomplishing this end minimally restrictive of the right to vote and the right of association? After reviewing the decisions reached in those cases we are persuaded that the New Jersey law in question is unconstitutional.

Pontikes v. Kusper, *supra*, was decided by a three-judge court which, by a margin of 2 to 1, declared unconstitutional the Illinois Statute preventing cross-over voting in primary elections for 23 months following a primary vote, reasoning as follows:

"[T]he statute sweeps too broadly, impeding both deceptive conduct and constitutionally protected activities. If section 7–43(d) were not in effect, massive party switching could occur either because of the well-planned raiding of one party, * * * or because of the massive dissatisfaction with the prevailing policies of any existing party. The state's interest upon which this statute is grounded could be characterized as 'compelling' only if the former alternative is more likely to occur than the latter, or if raiding constitutes a more important danger * * * to constitutionally protected rights however often it occurs. There is no evidence to indicate that raiding is more likely to take place than 'honest' switches of affiliation. Forty-four states do not impose post election restraints on changing affiliation. This would indicate that raiding is not a serious threat to the multi-party system."

In Gordon v. Executive Committee of Democratic Party of City of Charleston, 335 F.Supp. 166 (S.D.Car.1971) another three-judge court struck down a state law that required each voter in a primary to take an oath affirming that he did not vote in another party's primary within a year. The Court could find no compelling purpose to "justify 'locking' a citizen into a party and denying to him for a full year freedom to change parties."

In Rosario v. Rockefeller, No. 71–C–1573 (E.D.N.Y. Feb. 10, 1972) the District Court, considering a state law requiring a voter to select the party in whose primary election he would vote prior to the preceding general election, or about seven months prior to the primary (November to June), found prevention of raiding to be a rational state policy and the method chosen to also be rational. However, citing the need for a compelling interest, it declared the law unconstitutional.

The Second Circuit reversed this decision 458 F.2d 649 on April 7, 1972.[1] It found the prevention of electoral fraud to be a "legitimate and compelling government interest."

█ The Plaintiffs have attempted to distinguish the Second Circuit's opinion in *Rosario, supra,* by pointing to that Court's Footnote No. 3. There the Court noted the existence of two minority parties in New York. These parties, the Conservatives and the Liberals, are well established but are dwarfed by the two major parties and are easy prey for "raiding". This, the Court said, gave the state a particular, compelling interest in preventing such practice. New Jersey, Plaintiffs say, has no similar problem or compelling interest. This Court, however, finds that the State can have a compelling interest in preventing "raiding". What is important from *Rosario, supra,* is the Court's emphasis on the necessity to protect the integrity of the political process:

"[T]he efficacy of the party system in the democratic process—its usefulness in providing a unity of divergent factions in an alliance for power— would be seriously impaired were members of one party entitled to interfere and participate in the opposite party's affairs. In such circumstances, the raiding party would be hard pressed to put forth the candidates its members deemed most satisfactory. In the end the chief loser would be the public." At p. 2609.

[1]. Rosario, the plaintiff in that action, on April 24, 1972 filed a petition for certiorari with the Supreme Court (S.Ct. Docket No. 71–1371) and on April 26, 1972 Justice Marshall granted a stay of the decision by the Circuit Court pending consideration by the Supreme Court. Briefs are to be filed with the Supreme Court by May 24, 1972. The New York primary will be held on June 20, 1972.

This reasoning applies to New Jersey as well, and thus we feel that New Jersey does have a compelling interest in preventing "raiding".

*Rosario, supra,* is distinguishable, however, on another basis. The Court there was impressed by the Statute's minimal infringement on First and Fourteenth Amendment Rights. It accomplishes its goal of preventing raiding while not requiring an excessively long commitment to a party by a voter. Forcing the voter to choose a party for the next primary prior to the preceding general election forces a voter who wishes to engage in "raiding" to recognize his inconsistency. "Few persons have the effrontery or the foresight to enroll as say, 'Republicans' so that they can vote in a primary some seven months hence, when they full well intend to vote 'Democratic' in only a few weeks. And, it would be the rare politician who could successfully urge his constituents to vote for him or his party in the upcoming general election, while at the same time urging a cross-over enrollment for the purposes of upsetting the opposite party's primary . . . Allowing enrollment any time after the general election would not have the same deterrent effect on "raiding" for it would not put the voter in the unseemly position of asking to be enrolled in one party while at the same time intending to vote immediately for another." At p. 2611.

The Court was thus convinced that New York could accomplish its statutory purpose through requiring only an approximately seven month party commitment with no need for a voter to refrain from voting in any election if he wants to change his party affiliation. We can see no reason why New Jersey requires a voter to wait until two subsequent primary elections have elapsed after casting a primary vote before a voter in this State can switch parties. The voter is inhibited from voting in primaries for those two years and only in the third year can he again exercise his full rights in the partisan political process. Moreover in alternate years national and state issues are apt to be dominant in New Jersey's elections. The gubernatorial elections in this state, for example, never coincide with presidential elections. N.J.S.A. Const. Art. II, par. 1; Art. XI, § III, par. 1. The statutes under attack require that a voter, having joined one party for the purpose of having a voice in the designation of a gubernatorial candidate, for example, be thereafter prohibited from joining another party in order to have a voice in the selection of candidates for national office in an election two years later. This is both unreasonable and excessive.

■ Thus, although the defendants have met their burden of showing a compelling interest by the state in preventing "raiding", the infringements on the right to vote and the right of association which the State selected go far beyond what is necessary for the protection of that interest. We therefore hold that so much of N.J.S. 19:23–45 and 19:23–46 which requires two successive primaries to elapse before a voter may change his party affiliation unconstitutional as being patently over-broad in scope.

It is Adjudged and Decreed:

(1) That the defendants, individually and as representatives of the class comprising state and local officials of New Jersey having responsibility for the enforcement of the New Jersey primary election laws, and all members of said class be and are hereby enjoined and restrained from enforcing the provisions of N.J.S. 19:23–45 and N.J.S. 19:23–46 by preventing persons seeking to vote in a party primary on the ground that by virtue of N.J.S. 19:23–45 he is deemed to be a member of another party;

(2) That the Attorney General of New Jersey shall forthwith furnish to all superintendents of elections and to all county boards of elections a notice setting forth the text of this injunctive order and shall instruct each superintendent and each county board of elections to take steps forthwith to notify all election officials under their supervision of the provisions of this injunctive order. No costs.