ELAINE HAND, CHAIRPERSON, HUNTERDON COUNTY DEMOCRATIC COMMITTEE, PLAINTIFF, v. MILDRED C. LARASON, HUNTERDON COUNTY CLERK, *ET AL.*, DEFENDANTS, AND ROY A. WIMMER, PLAINTIFF, v. MILDRED C. LARASON, CLERK OF HUNTERDON COUNTY, *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided September 20, 1978.

Mr. *Robert B. Reed* for plaintiff Hand.

Mr. *Daniel Knee* for plaintiff Wimmer (*Messrs. Knee & Tauriello,* attorneys).

Mr. *Louis Miller* for defendant Larason (*Messrs. Vaida & Miller,* attorneys).

*Ms. Janice S. Mironov,* Deputy Attorney General, for defendant Hunterdon County Board of Elections and Donald Lan (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

No appearance was made on behalf of the defendant Marie Koch.

D'ANNUNZIO, J. C. C. (temporarily assigned). These consolidated actions, arising out of the June 1978 primary election for the nomination of candidates for the office of Mayor of the Borough of Califon, raise issues of first impression, including one of constitutional dimensions.

The matters are before the court on motions for summary judgment, and the facts have either been supplied by affidavit or have been stipulated by the parties.

Marie Koch and Roy Wimmer were on the Republican ballot. Mrs. Koch won. There was no candidate on the Democratic ballot, but Mrs. Koch received a majority of Democratic write-in votes authorized by *N. J. S. A.* 19:15–28 and *N. J. S. A.* 19:23–47. Wimmer also received Democratic write-in votes.

Mrs. Koch's name appeared on the Republican ballot as the result of a nominating petition, pursuant to *N. J. S. A.* 19:23–5 *et seq.* As required by those statutes, the petition contained Mrs. Koch's signed acceptance of the Republican nomination in the event she won the primary. The petition and acceptance are one document which was executed on April 24, 1978, a copy of which is appended to the opinion. At no time did Mrs. Koch revoke her Republican acceptance or decline the Republican nomination.

*N. J. S. A.* 19:23–16 requires that any person nominated by write-in file a certificate of acceptance within seven days of the primary election. On June 9, 1978 Mrs. Koch filed a document, a copy of which was submitted to the court as part of the affidavit of Mildred Larason. At oral argument the court also had the document marked as C-1 in evidence,

and a copy is appended to this opinion. The threshold issue is whether C-1 constitutes an acceptance of the Democratic write-in nomination. Plaintiff Hand, chairperson of the Hunterdon County Democratic Committee, contends that it does not constitute an acceptance, and therefore there is a vacancy in the Democratic nomination for mayor within the meaning of *N. J. S. A.* 19:13–20, which can be filled by the Califon members of the Democratic County Committee. Plaintiff Wimmer takes the same position. Defendant Larason, the Hunterdon County Clerk, takes the position that C–1 constituted an acceptance; therefore, no vacancy exists. The county clerk has, accordingly, informed the parties that she will not recognize any Democratic nominee chosen by the Democratic County Committee to fill any alleged vacancy.

Plaintiff Hand further sharpens her position by contending that C-1 is, in reality, an election by Koch under *N. J. S. A.* 19:14–9 to have her name placed in the Republican column on the general election ballot. That section provides that a candidate who receives more than one nomination for the same office may have his name in only one party column, to be selected by him in writing within seven days after the primary election. If the candidate does not select, the county clerk shall do so.

Alternatively, plaintiff Hand argues that C–1 cannot legally be an acceptance of the Democratic nomination, because Koch had accepted the Republican nomination for the same office, and no person in New Jersey can legally accept the nomination of more than one party for the same office.

Plaintiff Wimmer, in addition, states that if there is a vacancy in the Democratic nomination he would like to fill it but is not qualified, because he cannot fulfill certain conditions set forth in *N. J. S. A.* 19:13–20(e). He contends that these conditions are unconstitutional in light of *Nagler v. Stiles,* 343 *F. Supp.* 415 (D. N. J. 1972), and *Kusper v. Pontikes,* 414 *U. S.* 51. 94 *S. Ct.* 303. 38 *L. Ed.* 2d 260

(1973). Specifically, Wimmer concedes that he cannot satisfy the specific condition that the person filling the vacancy not have voted in another party's primary in the last two elections, because he, Wimmer, has so voted in Republican primaries.

*N. J. S. A.* 19:13–20 prescribes a method of candidate selection "[i]n the event of a vacancy, howsoever caused, among candidates nominated at primaries * * *." *Fiscella v. Nulton,* 22 *N. J. Super.* 367 (App. Div. 1952), held that the winner of a primary by write-in votes has been nominated and that the nominee's failure to file an acceptance constitutes a vacancy within the meaning of *N. J. S. A.* 19:13–20. Therefore, if Marie Koch did not file a valid acceptance of the Democratic write-in nomination, there exists a vacancy which may be filled by the statutory procedure.

■■ It is the opinion of this court that no valid acceptance was filed by Mrs. Koch. There is no express statutory authorization which would allow any candidate to accept the nomination of more than one party for the same office. Neither is there a clear express statutory prohibition which would preclude dual acceptance. However, the election laws must be read *in pari materia;* therefore, their intent must be gathered from the whole of the context. *Fiscella v. Nulton, supra.*

Candidates may be nominated for inclusion on the ballot at the general election either directly by petition as so-called independents or by participation in a party primary and nomination therein by majority vote. *N. J. S. A.* 19:13–1. With regard to direct nomination by petition, *N. J. S. A.* 19:13–4 provides "no such petition shall undertake to nominate any candidate who has accepted the nomination for the primary for such position." *N. J. S. A.* 19:13–8 prohibits a candidate from accepting a direct nomination "if he has signed an acceptance for the primary nomination or any other petition of nomination under this chapter for such office." *N. J. S. A.* 19:23–15 complements these provisions. It provides that no person who has accepted a nomination

by direct petition shall accept a petition of nomination for a party primary.

These statutes evince a legislative intention that a prospective candidate must choose between participation in a party primary and direct nomination by petition as an independent. The candidate cannot have both. This legislative intent was applied and enforced in *Sadloch v. Allan,* 25 *N. J.* 118 (1957), where the court held that a defeated primary candidate could not be placed on the ballot in the general election as a substitute for a candidate who had been nominated by direct petition but who had died before the general election. In its opinion the Supreme Court reviewed the history of the election laws bearing upon the issue and found a "legislative design to protect the integrity of the nominating process at primary elections and to withhold the privilege of inclusion on the ballot printed at public expense of the name of a person who assumes the cloak of an independent candidate after professing membership in a particular party adherence to its general principles, and on that basis seeking the designation as a standard bearer of the party for elective office." 25 *N. J.* at 124. But *cf. Riecker v. Hartmann,* 130 *N. J. Super.* 266 (Law Div. 1974), which held that a person defeated for the Republican nomination in the Republican primary could accept the Democratic nomination based on write-in votes and be on the ballot as a Democrat in the general election. *Riecker* differs from the case at bar, because Mrs. Koch *won* and *accepted* the Republican nomination.

In *Kilmurray v. Gilfert,* 10 *N. J.* 435 (1952), the court rejected an attempt by the Republican nominee to prevent the Democrats from filling a vacancy occasioned by the death of its nominee. The vacancy statute, by its terms, was applicable only to vacancies occurring at least 37 days before the general election. The nominee had died within 35 days of the election. Nevertheless, and because of the importance attached by the court to a functioning two-party system, the court upheld the filling of the vacancy, stating:

It is in the public interest and the general intent of the election laws to preserve the two party system and to submit to the electorate a ballot bearing the names of candidates of both major political parties as well as of all other qualifying parties and groups. It would be contrary to that interest and intent effectively, even if not theoretically, to deny the right of one of the major political parties to place a candidate's name before the electorate. * * * [at 441]

While *Kilmurray and Sadloch* do not control the decision in the case at bar because of their distinguishable factual contexts, they instruct us that the public interest, as it is served by the multiparty political system, is a lodestar to the construction of *Title* 19. See *Stevenson v. Gilfert,* 13 *N. J.* 496 (1953).

Having been nominated by both parties, Mrs. Koch faced a decision. *N. J. S. A.* 19:14–9 provides:

A candidate who receives more than one nomination for the same office, either from more than one political party or from more than one group of petitioners, or from one or more political parties and one or more groups of petitioners, shall have his name printed on the official general election ballot in only one column to be selected by him from among the columns to which his nominations entitle him, and shall have such designations after his name as he shall select, consisting of the names of the political parties nominating him, with the words "Indorsed By", if he so desires, and the several designations to which he is entitled by the other nominations, if any, and printed in such order as he shall select.

The candidate shall file with the secretary of state or county clerk, as the case may be, his selection of his column, and the designations to follow his name and their order. Unless such selection is so filed within seven days after the primary election, the secretary of state or county clerk, as the case may be, shall determine in what column and with what designations his name shall be printed. The designations shall be printed in small type, and if necessary, in several lines or in a line below his name and may be abbreviated.

It is clear that whatever else document C-1 may be, it was undoubtedly designed to serve as an election by Mrs. Koch under this section to have her name submitted to the voters in the general election as a Republican. It is also clear that this section precluded her name from also being submitted to the voters in the Democratic column, although Mrs. Koch

has the right to have the phrase "Indorsed By Democratic Party" follow her name in the Republican column. The court notes that the permitted word is "Indorsed" not "Nominated."

Defendant Larason takes the position that *N. J. S. A.* 19:14–9 deals merely with the mechanics of printing the ballot and no implication can be gleaned from it that election to be in the Republican column is a rejection of the Democratic nomination thereby creating a vacancy. According to him, Mrs. Koch had the power to accept both nominations although her name will appear only in the Republican column. Therefore, according to Larason, the Democratic column must remain blank available only for write-in votes.

*Wene v. Meyner,* 13 *N. J.* 185 (1953), established a standard for statutory construction which it applied to *Title* 19:

> A statute is not to be given an arbitrary construction, according to the strict letter, but rather one that will advance the sense and meaning fairly deducible from the context. The reason of the statute prevails over the literal sense of terms; the manifest policy is an implied limitation on the sense of the general terms, and a touchstone for the expansion of narrower terms. [at 197]

The county clerk's position does not serve the public interest. If adopted as law, it would eliminate a final opportunity for a major political party to effectively develop and promote a candidate. It would effectively subvert the ideal of multi-party political competition with no concomitant benefit to the electorate. In the opinion of the court, an election pursuant to *N. J. S. A.* 19:14–9 precludes an acceptance of the opposition's nomination, thereby creating a vacancy to be filled pursuant to *N. J. S. A.* 19:13–20.

This construction of the statute serves the public interest, advances the intent of the general scheme of *Title* 19 and is consistent with the principles enunciated in *Sadloch v. Allan* and *Kilmurray v. Gilfert.* But *cf., Brower v. Gray,* 5 *N. J. Super.* 145 (App. Div. 1949) (where the court in dictum suggested that *N. J. S. A.* 19:14–9 was a recognition of

the general propriety of "accepting nominations from more than one political party." The issue was definitely not before the court).

■ As an alternative ground to its holding that a vacancy exists, the court also finds that the document C-1 does not constitute an acceptance of the Democratic write-in nomination even if we assume that Mrs. Koch had the power to accept. *N. J. S. A.* 19:23-16 sets forth the contents of the required certificate of acceptance. Six items are required. The nominee must certify that (1) he is qualified; (2) he is a resident of the jurisdiction; (3) he is a legal voter in the jurisdiction; (4) he consents to stand as a candidate; (5) an oath of allegiance be annexed, and (6) that the oath be subscribed before an officer authorized to take oaths. Examination of C-1 reveals that only items (4) and (5) are complied with. The court finds that C-1 constituted an election under *N. J. S. A.* 19:14-9 and not an acceptance of the Democartic write-in as required by *N. J. S. A.* 19:23-16.

Since a vacancy exists, the final issue is whether plaintiff Roy Wimmer is eligible to fill it. *N. J. S. A.* 19:13-20 provides the machinery by which a vacancy may be filled. Subsection (c) requires that the person endorsed to fill a vacancy have certain qualifications. It provides in part as follows:

Accompanying the statement the person endorsed therein shall file a certificate stating that he is qualified under the laws of this State to be a candidate for the office mentioned in the statement, that he consents to stand as a candidate at the ensuing general election and that he is a member of the political party named in said statement, and further that he is not a member of, or identified with, any other political party or any political organization espousing the cause of candidates of any other political party, that he has not voted in a primary election of any other political party in the last two primary elections, or contributed to the campaign funds of any other political party within one year prior to the last primary election, to which shall be annexed the oath of allegiance prescribed in R. S. 41:1-1 duly taken and subscribed by him before an officer authorized to take oaths in this State. The person so selected shall be the candidate of the party for such office at the ensuing general election.

In his supporting affidavit Wimmer states that he is now a declared Democrat pursuant.to *N. J. S. A.* 19:23–45 but that he cannot fulfill all the conditions of subsection (e) because he has voted in the Republican primary and indeed ran as a Republican in the June primary and is currently the mayor having been elected as a Republican. Wimmer contends that these conditions are unconstitutional limitations on his right to run for and hold office.

*Stevenson v. Gilfert,* 13 *N. J.* 496 (1953), arose out of the mass resignation of certain Republican nominees and an attempt to fill the resulting vacancies with Democrats. The court rejected a constitutional attack on *N. J. S. A.* 19:13–20 similar to the attack mounted by plaintiff Wimmer, holding that the requirement that a substitute nominee be a member of the party nominating him was a reasonable exercise of legislative power to protect the integrity of the party structure in a situation which it characterized as an emergency.

Wimmer seeks to avoid *Stevenson v. Gilfert* on the ground that it has been superseded by *Nagler v. Stiles,* 343 *F. Supp.* 415 (D. C. N. J. 1972), and *Kusper v. Pontikes,* 414 *U. S.* 51, 94 S. Ct. 303, 38 *L. Ed.* 2d 260 (1973). *Nagler* held that New Jersey's statutes, which required two successive primaries to elapse before a voter could change his party affiliation, were unconstitutional, as being unreasonably restrictive. In *Kusper* the Supreme Court reached the same conclusion regarding a similar Illinois statute.

■ Wimmer argues that the conditions of *N. J. S. A.* 19: 13–20(e) are unreasonably restrictive on his right to hold office and, therefore, under the *Kusper* and *Nagler* rationale, those conditions are unconstitutional. Wimmer's argument ignores the fact that the voter qualification statutes involved in *Kusper* and *Nagler* were absolute bars to changing party affiliation in at least two annual primary elections. The conditions confronting Wimmer do not bar him from seeking and winning the office of mayor. They have a limited effect by barring him from appearing on the ballot as a Demo-

cratic nominee. Wimmer is not precluded from holding himself out as a candidate and promoting a write-in campaign. See *Stevenson v. Gilfert, supra.*

Wimmer further argues that the constitutional impairment is obvious and made manifest when it is considered that he need not have fulfilled subsection (e) conditions to get on the Democratic ballot if he had received a majority of the write-in votes, and is legally capable of running in next June's Democratic primary without fulfilling subsection (e) conditions. Wimmer's argument ignores the factual context which gives rise to the operation of *N. J. S. A.* 19:13–20. That section is solely operable on the occasion of a narrowly defined set of circumstances, *i. e.,* a nomination followed by a vacancy between the primary and 37 days prior to the general election. It operates in a circumstance characterized in *Stevenson v. Gilfert* as an emergency. It operates in a context of political crisis and instability, and in response thereto it entrusts to a limited number of people the power to name a candidate. In the case at bar the power is given to two people. Considering the instability of the situation, the possibilities of chicanery and political opportunism, and the grant of nominating power to a limited group, it is not an unreasonable exercise of legislative power to define the parameters of the exercise of that power more narrowly than the parameters of the right to vote. *Stevenson v. Gilfert* is in no way undermined by *Nagler v. Stiles* and *Kusper v. Pontikes. Mammon v. Schatzman,* 472 *F.* 2d 114 (3 Cir. 1972).

▮ The plaintiff Hand raises an additional question in the second count of her complaint and through affidavits filed on her behalf. She contends that the two members of the Democratic committee from Califon are, or will be, deadlocked and that the court should now give instructions as to whether *Title* 19 provides any machinery for the resolution of a deadlock. The court rejects the invitation to render such an opinion at this time. The issue is not currently ripe for determination. However, the court retains jurisdiction for future disposition of the second count if it becomes necessary.

# PETITION

## Nominating Petition

## for Primary Election

. . . . . . . . . **Party**

...: ... . ...... . .. . .. .... ......................................

OFFICE ...............................................................

... .. ............ . ... ... .. . ...................................

APR 24 1978

FILED ...............................................................

*Elizabeth M. Stephen*
Clerk

**STATE OF NEW JERSEY,**
**COUNTY OF HUNTERDON** ss.

I, Marie P. Cole, being duly sworn, upon his oath saith that he is one of the signers of the petition hereto annexed; that such petition is signed by each of the signers thereof in his own proper handwriting; that each of such signers are, to the best knowledge and belief of the deponent, legal voters of the ........ Election District (strike out reference to "Election District" if candidate is to be voted for by the voters of more than one district; in the ........ Borough ....... of ........ Califon ........ in the County of Hunterdon, State of New Jersey, as stated in said petition, and belong to the political party named in said petition, and that such petition is prepared and filed in absolute good faith for the sole purpose of endorsing the person or persons therein named in order to secure his or their nomination or selection as stated in said petition. (19: 23-17)

Subscribed and sworn to before me at

... Califon, ............ N. J.,

on ... 27 April 1978 .........

Elizabeth M. Graham

L. S.
NOTARY PUBLIC OF N. J.

My Commission Expires ... s. 1, 1980

*Marie P. Cole*

---

**CANDIDATE'S REQUEST FOR DESIGNATION ON THE OFFICIAL PRIMARY BALLOT**

The above candidate, having been endorsed for the office mentioned in this petition, does hereby request that there be printed opposite his name on the said primary ticket the following designation: (19: 23-17)

*Republican Party*

(Must not exceed six words)

**CERTIFICATE OF ACCEPTANCE**

I, the undersigned hereby certify that I am a member of the Republican Party, and qualified for the office mentioned in said petition; that I am a resident of and a legal voter in the jurisdiction of the office for which the nomination is to be made; that I consent to stand at the ensuing primary election and that if nominated I agree to accept the nomination.

*Marie P. Cole*

(Signature of Candidate)

NOTICE:

All candidates are required by law to comply with the provisions of the New Jersey Campaign Contributions and Expenditures Reporting Act. 19:44A-1 to 44.

82

FILED

TO THE COUNTY CLERK OF HUNTERDON COUNTY:

Jun 9 10 39 AH '78

Having received _____ 89-Rep.
                      60-Dem._ votes in the PRIMARY ELECTION HUN COUNTY
                                                    MILDRED C. LARASON
_Califon Boro_____, for the office of ___Mayor___  CLERK

_____ in the _Borough___ of _Califon___

and no other person receiving that number of votes in said primary election

I do hereby accept the nomination for that office and would request that my

name be placed on the Official Ballot at the coming General Election to be

held on ___November 7, 1978___, in the ___Republican___ Column.

"Endorsed by Democratic Party"

Dated: ___June 9, 1978___                      _____
                                                (Signature in Full)

                                               Railroad Avenue, Box 394
                                               Califon, N. J. 07830
                                               (Address in Full)

Oath of Allegiance: 41:1-1

I, ___· Marie P. Koch_____, do solemnly swear (or affirm) that

I will support the Constitution of the United States and the Constitution of

the State of New Jersey, and that I will bear true faith and allegiance to the

same and to the Governments established in the United States and in this State,

under the authority of the people, so help me God.

                                        _____
                                         (Signature in Full)

                                         Marie P. Koch
                                         (Print Name in Full)